My name is David Klein, and I'm here on behalf of the appellant, Mr. Kortgaard. At this moment, I'd like to reserve five minutes for rebuttal. I'll try to keep track of my time. What I'd like to point out, first of all, is go over the 4A1.3 argument. I think in some ways that's perhaps the most interesting argument here. What we're talking about at this point is back to the whole Blakely-Amyline issues that I'm sure the Court is well aware about. In this case, what we had is we had the trial court making an upward departure, granting the government's motion for upward departure based upon 4A1.3 of the guidelines. Now, 4A1.3 of the guidelines, in order to grant the motion for 4A1.3, and when you look at 4A1.3, it clearly relies upon facts other than prior conviction. And when you look at 4A1.3, when you're telling the Court there you can depart upward, it's not just prior convictions. You're talking about administrative things. You're talking about arrests. You're talking about a whole series of different things besides prior convictions that can justify the basis for the upward departure. In addition, the fact itself is what the trial judge has to find himself or herself, what the trial judge has to find. The trial judge has to find that the conduct was so serious or that he has a great risk of recidivism, and it is those facts other than prior conviction. Even if you look at what is considered a prior conviction under the Ninth Circuit, a prior conviction doesn't include juvenile convictions. We look at the case of the United States v. Tide, and you see that the juvenile convictions aren't included because of the fact that they may, they don't have the same constitutional rights, rights such as right to a jury trial. Mr. Klein, the issue here on the upward departure is a little different from the bulk of the kind of likely questions, the booker fan fan questions that we've been looking at, where a judge is saying there is uncharged conduct here, and I'm going to find that even though it was uncharged that you probably did it, and therefore we're going to adjust your sentence. Things that ought to be put before a jury. In Mr. Kortgaard's case, we have evidence of prior convictions. These are convictions with things which either one, he's pled guilty, or two, a jury has found him guilty. So we've had jury involvement or court involvement previously. Now, why is consideration of those questions a question for the jury? If you have a whole laundry list, let me just finish one more thought. If you have a whole laundry list of prior convictions, and the question of recidivism comes in, what is it that the court can't do that a jury would have to do in that case? Because in that case, what would happen is, for example, we have guidelines that provide that if you can get convicted of a certain offense, your guideline range is adjusted. For example, if you look to the firearm offenses are a prime example of that. If you look to, for example, 2K2.1, and in that situation, what you would say here is that under the guideline there, it says if the offense involved a firearm, and it was committed subsequent to sustaining at least two prior felony convictions, and a career offender statute. And what you have there is you have that finding. You have a felony conviction, and the court makes that decision. But unlike that, you have to take the step, in this case, you have to go further than that. Just because I may have three prior convictions, or I may have ten prior convictions, that doesn't necessarily mean that a jury wouldn't find that I'm not a good risk, that they wouldn't find that I'm a good risk for a recidivist. The other point, and that's the argument that has to be made to the jury. It's not the actual finding of the conviction. It's not the fact that you have, I have this conviction as far as, you know, a conviction, you know, that isn't counted now from like 15 years ago or something like that. And based upon that, I'm going to find you a recidivist. If the guideline were to say, for example, Your Honor, the guideline were to say, and it doesn't say that, but if it were to say, you know, if you have five convictions, you know, from 20 years ago, you know, your guideline reign is going to be adjusted, under, you know, the law now, under Ameline, under the law of Ameline, I would agree with you. I mean, that's something that the court can find. But that's not what we have here. What we have here is we have the further step. Okay, you have these prior convictions. And I'll go back to what a prior conviction is. But you have these prior convictions. And what we're now doing is we are now saying, does that mean just because you have prior convictions, does that mean you get the upward departure at that point? It doesn't. It doesn't say you're in Category 1, you're in Category 2, you're in Category 3 or Category 4. In fact, under the guidelines, these convictions are specifically excluded. Okay? And everyone agrees these convictions are excluded under the guideline calculations. However, what you have then is you have the next step. And the next step is an argument to the jury. Okay. Mr. Kortgaard has ten things. But you know what? At this time, Mr. Kortgaard was a teacher over at the University of Hawaii. At this time, he was a tennis pro. He was the kid's tennis coach. He was helping the children. He was trying to make a change in his life at this point. He is no longer. That was another part of his life. That was another part. And it is up to the jury at this point to make that decision as far as whether or not that individual is a recidivist or whether or not those offenses that he was previously convicted of, whether or not is outside of the heartland, so to speak, of the guideline. Prior convictions. How could a jury make a decision about whether it was out of the heartland of the guidelines? You know what? We write jury instructions for everything. And what I'm saying is that it doesn't change the fact that what the Supreme Court has said, or at least regarding Blake, this Court has said in Avalon, is that any fact other than a prior conviction has to be proven to a jury. And so what would you call these facts? What would you call the fact of whether or not someone is a... We're not saying related to a prior conviction. The language in these cases doesn't say, well, if it's any fact that is related to a prior conviction, then it doesn't have to be proven to a jury. It says any fact other than a prior conviction. And there's a big... You know, you distinguish. We talk about language and we talk about distinguishing, and we can understand the differences. When we talk about prior convictions, when we go to prior convictions, the reason at this point, even though I know there's all this question whether or not prior convictions ultimately... I mean, they're going to be challenged. But at this point, you think about it. I mean, prior convictions are on the record. They're whatever. I mean, you know, you either did it or you didn't do it. Are we... Oh, I'm sorry. I didn't want to interrupt. I finished with Judge Bibby. I'm sorry. And so it's a different sort of finding. The other thing that's important, I think, in 4A1.3, is that it doesn't just talk about prior convictions. I mean, so the question is... And when we look at 4A1... When you actually look at 4A1.3, and they talk about what you can use, they say here... Let's start there. That's where I wanted to find out where you're coming from. 4A1.3A1 talks about seriousness and likelihood. Is that where you're thinking the jury is going to get into this determination? That is correct, Your Honor. So somehow there would be some sort of factual presentation to the jury relative to seriousness and likelihood. Isn't that something we're going to have to wait for Booker and Fanfan to... Oh, I agree with you. See, I don't know how... Very frankly, I don't know how you get the jury into that process. But, I mean, I don't know what Booker and Fanfan is going to say either. Well, I mean, when we filed these... When I filed my opening brief, it was a month after Blakely was just granted on certiorari on all this. And as the government had pointed out, I mean, they had done it to preserve, you know, this whole argument. And then Blakely came out. And clearly, now we've had Ameline. And, you know, the Ninth Circuit has, you know, for whatever purposes may say, and I know we go in court every day and we appear in front of it, and we all know we're all waiting for Booker and Fanfan at this moment. But I'm assuming at this time, and I have to assume at this point, that Blakely is going to be the law. But you're going to be zeroing in on the fact that somehow in determining the standard for upward departure, the jury's going to have to get into 4A1.3A1 and determine seriousness and likelihood because that's the basis of this, as I see it, of the standard for upward departure. I agree with you. But that's your argument. That's clearly my argument, but my argument goes further than that. It goes further than that when you're looking at the factors that are included in 4A1.3 and the factors in this case that the government moved for the basis of the upward departure. They are factors other than prior convictions. For example, under 4A1.3, it says prior similar adult criminal conduct not resulting in a criminal conviction. Can we now use that? I'm just saying, I mean, how do you put forward to a jury at this time? I mean, you can't, under that section, under what Blakely says, and when I think, I mean, obviously what we believe is going to be the law eventually and what the law is right now under Ameline, that is not a fact of a prior conviction. Well, I'm not trying to get too far ahead here, but I assume also that if Blakely is the law, you're going to want to brief, considering however the Supreme Court frames it, you're going to want to brief your argument because I don't even know how to frame your argument now, although I know what you're saying here. No, I understand it. I mean, it sounds like we're going, I'm just trying to find out from you, you've got to get to Blakely and then you're going to have to tell us how whatever they say applies relative to how this section applies if it survives. Right, I agree with you. Because you're saying this is just not a case with prior convictions, period. I am saying that 4A1.3 requires facts other than prior convictions. What do we know that happened in this case? Let's assume we have this case, and I'm not going to tell you what the record is, I'm just going to say assuming that the judge says we've got four priors, I'm going to make an upward departure. Now what? He did have priors here. He had priors here. Several of the priors that he had were juvenile priors out of Canada, and he also had Canadian convictions as well. The reason I bring that up, Your Honor, of going back to the definition of what a prior conviction is, and when we look at what a prior conviction is, is what we're looking at is under Ninth Circuit law, what they're talking about. On foreign convictions? Well, not necessarily, because under TIE, United States v. TIE, they excluded juvenile convictions as considered a prior conviction under Apprendi. But that doesn't sound like it's a jury issue, as Judge Bybee said. May I just address that for a moment? What they did 2.2 in TIE is the lack of the same constitutional requirement, yeah, the same constitutional requirements that you have as a juvenile, not that you have as an adult, the lack of a jury trial, you know, the standard of proof. And when we start dealing with foreign convictions as well, we run into those same issues. Even in a country like Canada, because even when we look at Canada and we look at their charter, and you look at under 11F of their charter, the right to a jury trial does not attach until you have a circumstance where you have the possibility of imprisonment of at least five years. So now we're racing into this whole other issue as far as what are prior convictions, whether or not foreign convictions are prior convictions under Apprendi, so to speak, as the Ninth Circuit has interpreted. But to go back to your Honor's issue as far as let's assume he had four prior convictions out of the United States, all, you know, all, he had an attorney, he had a jury, he had his appeals, he had everything under there. It's that additional factor, you know, the fact of recidivism, the fact of whether or not it's a serious past criminal conduct. So you're back again saying that 4A13A1 starts with seriousness and likelihood that he would commit other crimes, and you throw in the prior conviction to establish likelihood and seriousness. That is correct, Your Honor. Okay. And that's what I'm saying. I'm saying in that circumstance you would still have to go to that issue. And it's because of that additional finding. It's the additional finding. I mean, if I had ten convictions from 15 years ago or something like that, and you would look at my record, and you would say, this is a horrible record. And shouldn't I be able to argue to the jury that, you know, I'm not a recidivist, it should be the jury. Once the jury makes that finding, whatever is required under 4A1.3, that the seriousness of the defendant's, you know, or the likelihood, then yeah. Then the judge has that discretion to move within that horizontal range, to move it wherever the judge wants. Because now the jury has made the factual finding that can increase a person's sentence. And it is for that reason. I don't know how the court would like to... You know, if the court is suggesting at this point that, you know, obviously we're all going to wait until Booker and Fanfan comes out with deciding this issue. But it's necessary at that time to further brief the issue. Of course, we would be willing to do so at that time. And what I can do is assume I... If I may be... If there are any other questions, I could answer them. Otherwise, I could save the remaining time for rebuttal. You may do that. Thank you. And we'll hear from Counsel for the United States. Good morning. My name is Michael Kolhar. I'm the Assistant United States Attorney here in the District of Hawaii. This is the second time I've prosecuted Mr. Kortgaard. I also was counsel of record before him in the prior federal conviction that Mr. Kortgaard had in the early 90s for heroin importation for which he received a 10-year sentence. It was within one year after he was released from his heroin importation sentence in this prior federal conviction that he committed the crime, marijuana cultivation crimes involved in this case. Bernice, why isn't... Assuming the state of the law as it now is under Ameline and Blakely, why isn't that an issue for the jury? You may be entirely persuasive, just as you were before the judge, but why aren't we required to view that as a jury issue? Well, I guess if I may jump ahead, just on the factual basis, and I think it's not only this conviction that one should consider should be a jury issue, but when you take Mr. Kortgaard's prior record, before his federal conviction in the early 90s in Hawaii, he lived for a period of time in California. There was another, I believe it was a burglary conviction there. And prior to that, he spent a considerable amount of time in Canada. While in Canada, he accumulated something like, as I recall, five separate felony drug convictions under Canadian law, including for marijuana and hashish. Then an additional four breaking and entering conviction in Canadian law. And we're not even talking about his juvenile dispositions. Well, I understand what you're saying, and I guess where I'm trying to sort this out is the Supreme Court has told us what they want to happen under Blakely relative to state sentences. We're now waiting to see whether we're going to have to live with it. Now, if we do live with it, I'm not too sure how far that's going to go. And I understand, and that's why I asked the question, can we say on this record that the fact that he had the Canadian convictions and the U.S. convictions takes it completely out of any factual determination for that determination of seriousness or likelihood, because I think that's the discretion that's being exercised by the judge. You know, you had some really serious background. I don't believe that you've shown that you're not going to do it again. Bingo, I'm going to give you some more. Is that a jury question? That's before the Supreme Court now. All I can tell you is, based upon the original decision that started this whole thing before Blakely is the Apprendi case. And in Apprendi, that is the one area, criminal history or prior convictions is the one area that the Supreme Court reserved that would not be submitted to a jury. Here's my problem with that. I don't know if your opposing counsel is quarreling with the facts of the convictions, leaving aside the issue of the Canadian ones and whether that's Let's leave that to one side. Let's just pretend that all of them happened in California and Hawaii. I don't think his argument is, well, we're not sure those happened. They did happen. A jury doesn't have to find it. They are in the case. The question is, though, what do you make of that? It's a little bit, to my mind, like the question that a death penalty jury is asked. Here's this person's record. What is the probability that they'll commit future violent crimes? We leave that to a jury, that future dangerousness. So why wouldn't we similarly in this kind of case, if this line of reasoning is applied to federal sentencing, why wouldn't we say that that same kind of issue of future dangerousness is left to a jury, even though the facts of the convictions themselves would have to be stipulated or would just be there in the case? That's where I have some confusion caused by this court when it issued Ammaline and then the Patterson case most recently came out. That causes me some confusion because given what happened just in the context of this case where the defense desperately did not want the fact of Mr. Kortgaard's prior federal conviction to come out during the case in chief or during the trial, is he now arguing that during the course of my evidence presentation on the marijuana offenses, I should also put on evidence and submit evidence of all the defendants' prior conviction? I think there's, at least as I understand it, I think that the analogy that I'm drawing to death penalty cases is the analogy that at least I'm understanding that defense lawyers are raising, that there's a liability phase and there's a penalty phase. That's true, except that I guess there's the question of how that's been approached in terms of the double jeopardy argument that has been raised by having separate jury sentences. Why would it be the separate jury? Why wouldn't it just be a penalty for the same jury? If you want that, if that's the case. In any event. We can have part of a continuum until we get Blakely and have Booker and Fanfan tell us what the first step is. My guess is we're going to have a million steps after that because it's all these sub-issues. Because unless we can just say that we have a Prendy issue and we've got a clear-cut prior conviction, bingo, you get an extra ten years, which I don't see here unless I've missed something. It seems to me we've still got to wait and see what they do on the first step. We don't know what's going to happen to our case as we've decided. My sense, at least at the current time, is that based upon that language about accepting prior convictions, other circuits, that's not been briefed here because at the time we submitted the briefing, of course this was pre-Blakely, but there are other circuits that have ruled, for example in the context of the Armed Career Criminal Act, what constitutes a crime of violence that is subject to the exception for convictions and those underlying facts of its characterization can still be as a judicial determination and not subject to the opinion. But here it's not a matter of characterizing the prior convictions. It's a matter of drawing an inference separate from the prior convictions as to what it portends for the future. Correct. Isn't that materially different than characterizing something as violent or nonviolent that's already happened? I'm not so sure it is, Your Honors, because you're asking for, what you're basically asking for is in the nature of, say, one particular conviction, you are asked, that's in the Armed Career Criminal, that's a characterization, say, of the crime as is it a crime of violence? Whereas what you're trying to do here is you're looking at, say, a series of convictions and saying from the nature of those particular crimes, does it appear that this defendant would be a repeat offender in the future? I'm not so sure that that's substantively that difference, say, from trying to characterize an individual or just one conviction by looking at several of them that occurred over the period of time. And I guess the question, I'm sorry, Your Honor. So you'd ask us to go to these other circuits and say if we can see five drug convictions, marijuana, whatever, and obviously the juries must have found factually that there was this drug trial or whatever, that then we would say those factual findings show that you continue to do it, and then we could hop over the language of seriousness and likelihood in the statute and say it's obvious, then it's likely you're going to do it, and we wouldn't have to send the likeliness, even though these prior convictions showed all this marijuana conviction or whatever, we wouldn't have to go to the jury for his likeliness of committing in this, after this crime. It's sort of an automatic. It's a per se you're going to do it again. Well, I guess it's a question of, my view is that why did the Supreme Court and Apprendi reserve that issue with respect to convictions? Or why did they take that position? Because it has always been a very traditional role of judges to begin with, to measure those particular factors, and to take that into account. There has been a tremendous concern about jury misusing that kind of information about criminal history. Well, Justice O'Connor might agree with you, and she probably has, as she said in Blakely, so maybe we have to wait to find out, because if not, we're back where Judge Graber was. Maybe we're in a situation where you have a penalty phase like a death penalty case. This person could be awful, awful, but they bring in all this good stuff like you shouldn't put him to death. Maybe this is one of those things that are going to force us to go and say you shouldn't increase because there's good sides to them. I don't know. I don't know that we can answer that now. It's all up to the Supreme Court. I don't know. Unless the court would want me to address the other issues that were raised by the defendants. I think we don't have any questions for you on that. Thank you, counsel. You have some time for rebuttal if you'd like to use it. Just briefly, Your Honor. Just as the court is well aware, the right to a jury trial attaches regardless of how strong the evidence is against you. What I mean by that is even though I have a horrendous right, even though I'm in a bank and I'm standing there with the cameras on me and I'm yelling my name that I just robbed this bank and I did this and I stand there, wait for the police to come and arrest me and take me away. The fact remains is I still have that right to a jury trial. Similar in these sort of circumstances, even though Mr. Caloir has pointed out my client doesn't have the greatest record in the past, the fact remains is that that additional fact, regardless of how bad the evidence may appear, we still have the right to that jury trial. And that's what I'm suggesting. Thank you. Thank you, counsel. We appreciate the arguments of both parties. They've been quite helpful. And we will take about a five-minute recess before continuing with our calendar. Is counsel for Alfonso Lawrence here? No, it's counsel. You're counsel? Okay. Also, we need to finish this brief break. Thank you, counsel. Thank you. Thank you. Thank you. Oh, okay. Okay. Okay. Okay, I'll go in from the back. I'll call you back. Okay. There was a trash can right on the other side. Okay.  All right. Thank you. Please be seated. Thank you.
judges: Brunetti, Graber, Bybee